IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 23-CV-0422-JFH |
| ANGELA WEAVER, | |
| Defendant. | |

**OPINION AND ORDER**

Before the Court is the motion for preliminary injunction ("Motion") filed by Plaintiff the United States of America (the "United States") against Defendant Angela Weaver ("Defendant"). Dkt. No. 6. For the reasons set forth below, the Motion is GRANTED.

**BACKGROUND**

In November 2020, Defendant applied for a Class A breeder license through the United States Department of Agriculture ("USDA"). Dkt. No. 6-2. USDA licensed breeders are considered "dealers" under the Animal Welfare Act, 7 U.S.C. §§ 2131-59 ("AWA"), and are subject to the AWA's requirements and regulations, which include supervisory inspections by Animal and Plant Health Inspection Services ("APHIS"), an arm of the USDA. *See* 7 U.S.C. § 2132(f) (defining a "dealer" as "any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of: (1) any dog or other animal whether alive or dead for research, teaching, exhibition, or use as a pet; or (2) any dog for hunting, security, or breeding purposes."); 7 U.S.C. § 2146 (setting forth provisions for AWA administration and enforcement by the USDA); 9 C.F.R. § 2.126 (setting forth facility access and inspection requirements for dealers under the AWA).

In July 2021, a pre-license inspection of Defendant's facility was conducted. Dkt. No. 6-3. The inspector identified a number of areas in which Defendant's facility was not in compliance with the regulations and standards, including: (1) the records Defendant provided did not align with the number of dogs observed on the property; (2) outdated rabies vaccines were stored on site; (3) incompatible dogs were housed together in one enclosure, creating a risk of injury or harm; (4) four puppies in two separate enclosures did not have access to water; and (5) two dogs exhibited injuries and no medical records were available to show that the injuries had been examined and treated by a veterinarian. Dkt. No. 6-3 at 2-6. On July 22, 2021, a second pre-license inspection was conducted. Dkt. No. 6-4. No instances of non-compliance were identified during the second inspection and Defendant's application for a Class A dog breeder license was approved. *Id.*

The United States claims that since Defendant's licensure in 2021, APHIS inspectors have made several attempts to conduct supervisory inspections, but to date, have been denied access to Defendant's breeding facility. Dkt. No. 6-5; Dkt. No. 6-6; Dkt. No. 6-7; Dkt. No. 6-8; Dkt. No. 6-9; Dkt. No. 6-10; Dkt. No. 6-11; Dkt. No. 6-12; Dkt. No. 6-13. On December 14, 2023, the United States filed this lawsuit seeking declaratory and injunctive relief. Dkt. No. 2. Specifically, the United States seeks an order: (1) declaring Defendant in violation of the AWA for failure to provide APHIS officials access to the facility; and (2) enjoining Defendant from further violations. *Id.* at 10. The United States also seeks preliminary injunctive relief, requesting that the Court order Defendant to: (1) allow APHIS officials to conduct an unannounced inspection of the breeding facility during business hours; (2) ensure that a responsible adult is available to accompany APHIS officials during the inspection process; (3) allow APHIS officials to photograph the facility, property, and dogs during the inspection process and to document instances of non-compliance; (4) allow APHIS officials to examine and copy AWA mandated records; (5) provide the United

States' counsel with an animal inventory to include the breed, sex, age, and unique identification number of each dog at the facility; (6) refrain from acquiring (by birth or transfer) or disposing (by euthanasia or transfer) any dogs in her possession or control without the consent of the United States or, if the United States denies consent, a court order; and (7) provide notice to the United States' counsel within 72 hours of any changes to the animal inventory, including the birth or death of any dogs at the facility.

## DISCUSSION

Under Rule 65 of the Federal Rules of Civil Procedure, a party seeking preliminary injunctive must show that: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotation marks and citation omitted).  The primary goal of a preliminary injunction is to preserve the pre-trial status quo. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).  "In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (internal quotation marks and citation omitted).

Because the primary goal of a preliminary injunction is to preserve the pre-trial status quo, courts are especially cautious when granting mandatory preliminary injunctions, which require the nonmoving party to take affirmative action before a trial on the merits occurs. *See RoDa Drilling*, 552 F.3d at 1208.  Therefore, to demonstrate the propriety of such relief, the movant must make a heightened showing of the four requisite factors.  *Id.*  This heightened standard is intended "to minimize any injury that would not have occurred but for the court's intervention." *Id.*  While

mandatory preliminary injunctions are traditionally disfavored, when the moving party demonstrates that the "exigencies of the case require extraordinary interim relief," the district court may grant the motion upon satisfaction of the heightened burden. *See Schrier*, 427 F.3d at 1258-59; *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

A. Likelihood of Success on the Merits

1. The Animal Welfare Act

The AWA was enacted, in pertinent part, to "insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment." 7 U.S.C. § 2131(1). To this end, the AWA and related USDA regulations set forth minimum requirements for the treatment of animals by dealers, research facilities, and exhibitors, including how animals are to be handled, housed, fed, transported, and provided veterinary care. 7 U.S.C. § 2143(a)(1)-(a)(2)(A); 9 C.F.R. § 3.1-.142.

Relevant here is the AWA requirement that dealers submit to mandatory supervisory inspections by the USDA. Under the AWA, USDA—through APHIS—must conduct supervisory inspections of dealers' facilities for AWA compliance. *See* 7 U.S.C. § 2146(a) (providing that the USDA shall make such investigations and inspections as deemed necessary to determine whether any dealer has violated or is violating any section of the AWA, or any regulation issued thereunder). Dealers are required to allow APHIS officials access to their facilities to conduct such inspections. *See id.* (providing that the USDA shall, at all reasonable times, have access to a dealer's place of business, facility, and animals, as well as the records required to be kept pursuant to the AWA).

4

In this case, the United States alleges that since Defendant's breeder license was issued in 2021, Defendant has repeatedly denied APHIS officials access to inspect her facility. Dkt. No. 6 at 1; Dkt. No. 6-1 at 1, 6-7. In support of this claim, the United States submitted: (1) an affidavit by APHIS Inspector Sarah Roloff detailing her attempts to conduct supervisory inspections of Defendant's facility and her communications with Defendant regarding her availability to provide access to the facility [Dkt. No. 6-5 at 2-11]; (2) a declaration by Michael Tygart, an APHIS Veterinary Medical Officer, describing his attempts to conduct supervisory inspections of Defendant's facility and his communication with Defendant regarding her availability to provide access to the facility [Dkt. No. 6-6 at 2-4]; (3) copies of text messages between Defendant and Inspector Roloff regarding attempted inspections and Defendant's availability to provide access to the facility [Dkt. No. 6-7]; and (4) Attempted Inspection Reports for December 16, 2022, February 16, 2023, March 31, 2023, May 10, 2023, July 7, 2023, and November 1, 2023 [Dkt. No. 6-7; Dkt. No. 6-8; Dkt. No. 6-9; Dkt. No. 6-10; Dkt. No. 6-11; Dkt. No. 6-12; Dkt. No. 6-13].

This undisputed[1] evidence in the record shows that between May 4, 2022 and November 1, 2023, APHIS officials attempted to conduct supervisory inspections of Defendant's facility on

---

[1] On December 18, 2023, the Court entered an Order for expedited briefing on United States' Motion. Dkt. No. 10. Defendant's response to the Motion was due January 12, 2024. *Id.* Defendant did not file a response or request an extension of time in which to do so. On January 19, 2023, the United States filed a reply in support of its Motion. Dkt. No. 16. As noted in the reply, absent a response from Plaintiff, the Motion may be deemed confessed. Dkt. No. 16 at 4; *see* LCvR 7.1(d) ("In the discretion of the Court, any non-dispositive motion or objection that is not opposed within fourteen (14) days may be deemed confessed."). However, in its reply, the United States also alerted the Court to a related administrative action in which Defendant filed two documents, that include information relevant to this case, and that Defendant (proceeding pro se) could have intended as a response to the Motion. Dkt. No. 16 a 4-5. Without any indication from Defendant as to whether her response in the administrative action was intended to be filed in this case, the Court will not infer any such intention. Defendant's response in the administrative action will not be considered in ruling on the Motion. Further, even if the response was considered, it does not contain any evidence to refute that submitted by the United States in support of the Motion. Dkt. No. 16-2; Dkt. No. 16-3.

eight occasions. Dkt. No. 6-5 at 2-11; Dkt. No. 6-6 at 3-4; Dkt. No. 6-7 at 2, 4, 8-10, 12; Dkt. No. 6-8; Dkt. No. 6-9; Dkt. No. 6-10; Dkt. No. 6-11; Dkt. No. 6-12; Dkt. No. 6-13. On each occasion, no one was available to provide access to the facility. *Id.* APHIS officials requested that Defendant provide her availability to allow access to the facility for unannounced inspections. Specifically, officials requested that Defendant identify three-hour windows of time on two or three days of the week during which she could be available to provide access to the facility. Dkt. No. 6-5 at 4-6; Dkt. No. 6-6 at 4; Dkt. No. 6-7 at 2-3, 5, 11. Defendant initially indicated that she could be available "Thursday or Friday 1-3." Dkt. No. 6-7 at 3. However, each time APHIS officials attempted an inspection during these times, Defendant was unavailable. Dkt. No. 6-5 at 4-8, 10; Dkt. No. 6-6 at 3; Dkt. No. 6-7 at 2-5, 7-13, 15; Dkt. No. 6-8; Dkt. No. 6-9; Dkt. No. 6-10; Dkt. No. 6-12. When APHIS officials requested updated availability, Defendant indicated that her work schedule prevented her from being available for unannounced inspections most days. Dkt. No. 6-7 at 4-8, 13-14. APHIS officials have not been able to conduct one inspection of Defendant's facility since her licensure in 2021, due to Defendant's recurrent unavailability to provide them access.

AWA regulations specify that during business hours, a dealer must allow APHIS officials to: (1) enter their places of business; (2) examine records required to be kept under the AWA and the related regulations; (3) make copies of those records; (4) inspect and photograph their facilities, property and animals as the APHIS officials consider necessary to enforce the AWA and the related regulations; and (5) document, by the taking of photographs and other means, conditions and areas of noncompliance. 9 C.F.R. § 2.126(a). The dealer must also ensure that a responsible adult is available to accompany APHIS officials during the inspection process. 9 C.F.R. § 2.126(b). These requirements are mandatory for all dealers licensed under the AWA.

Because Defendant has repeatedly denied APHIS officials access to her facility for AWA mandated inspections, the court finds that the United States is likely to succeed on the merits of its AWA claim and this factor weighs heavily in favor of granting preliminary injunctive relief.

**B. Likelihood of Irreparable Harm Absent Injunctive Relief**

To show a risk of irreparable harm, the movant must demonstrate "a significant risk" of harm that "cannot be compensated after the fact by money damages." *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1270–71 (10th Cir. 2022). "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) (citation omitted). Courts have found that damage awards would be inadequate in a number of circumstances, especially in situations where: (1) the award would be speculative because the damages are not easily quantifiable; and (2) where the injury is of a continuing nature. Charles A. Wright and Arthur R. Miller, 11A FEDERAL PRACTICE & PROCEDURE § 2944 (3d ed., Apr. 2018) (collecting cases).

Here Defendant has denied APHIS officials access to inspect her facility for nearly two-and one-half years. As such, APHIS officials have not been able to confirm the safety, well-being, and humane treatment of the dogs in Defendant's care. In the initial pre-license inspection of Defendant's facility, APHIS officials identified several instances of noncompliance. Dkt. No. 6-3. Although these issues identified in the initial report were remedied prior to Defendant's licensure, APHIS officials have not been able to determine whether any of the issues have reoccurred. Additionally, at the initial inspection, APHIS officials documented 72 dogs at Defendant's facility, the majority of which were puppies. Dkt. No. 6-3 at 3. Defendant

subsequently advised Inspector Roloff that she works from 7:30 a.m. until 5:00 p.m. during the week and is on call Saturday and Sunday.  Dkt. No. 6-7 at 4.  She also stated that she has little or no help caring for the dogs at her facility.  Dkt. No. 6-8 at 8.  Based on these statements, it appears that Defendant is attempting to care for a significant number of dogs in the evenings after work and on the weekends when she is not on call.  Without conducting AWA mandated inspections, the USDA can not determine how many dogs are currently housed at Defendant's facility or whether they are receiving adequate food, water, and veterinary care.  This poses a substantial risk of harm.

Further, the USDA has a compelling interest in maintaining its inspection program to ensure that licensees comply with the AWA and its regulations. Here, APHIS officials have attempted to inspect Defendant's facility and been denied access at least eight times.  Each attempted inspection consumes valuable time and resources.  Additional time and resources have been spent communicating with Defendant in attempts to ascertain her availability and coordinate with her schedule.  As the United States points out, continuing this pattern would expend limited APHIS resources that could be utilized inspecting other facilities or performing APHIS' other important duties.

These intangible and continuing harms are precisely the types of harms that injunctive relief is intended to protect against.  The Court finds that this factor weighs in favor of granting preliminary injunctive relief.

C.  **Balance of Equities**

To show that the balance of equities weighs in favor of granting preliminary injunctive relief, the movant must show that its threatened injury, absent such relief, outweighs the opposing party's threatened injury under the injunction.  *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d

1221, 1232 (10th Cir. 2019). As the Court has acknowledged, the United States has a compelling interest in enforcing the AWA and efficiently managing its limited resources. As Defendant has not responded to the United States' Motion, she has not presented any evidence of a competing interest that would outweigh that of the United States. To the extent that Defendant's interest in maintaining full time employment prevents her from AWA compliance, the Court notes that Defendant was aware of her obligations under the AWA and agreed to meet them when she applied for a breeder's license. *See* Dkt. No. 6-2 at 2 (certifying in her license application that Defendant was familiar with and agreed to comply with AWA regulations and standards). Defendant is not obligated to keep her breeder's license. However, if she chooses to do so, she must comply with the requirements of the AWA, despite the demands of her schedule. Balanced against the United States' potential injuries—being prevented from enforcing the AWA wasting valuable resources—this factor weighs in favor of granting injunctive relief.

### D. Public Interest

In its statement of policy for the AWA, Congress has made clear that animals "intended for use in research facilities or for exhibition purposes or for use as pets" must be treated and cared for in a humane manner. *See* 7 U.S.C. § 2131(2) (stating that one purpose of the AWA is "to assure the humane treatment of animals"). Moreover, it is always in the public interest for citizens to follow the law and not profit financially from unlawful activity. *See United States v. Lowe*, No. 20-cv-0423-JFH, 2021 WL 149838 at *15 (E.D. Okla., Jan. 15, 2021).

Here, the relief requested by the United States is tailored to reflect the AWA regulations and standards and to provide the United States and the Court with mechanisms by which the AWA and subsequent court orders requiring AWA compliance can be enforced while placing a minimum burden on Defendant. *See Lowe*, No. 20-cv-0423-JFH, 2021 WL 149838 at *15 (finding that requiring AWA compliance and providing the USDA "accurate and up to date information

regarding [Defendant's] animal inventory, acquisition and disposition of animals" is not a "heavy burden" and is "not onerous compared to ensuring the health, safety, and wellbeing" of the animals in Defendant's care). Therefore, under the circumstances presented here, the Court finds that the public interest favors granting injunctive relief.

In sum, the Court finds that the preliminary injunction factors weigh in favor of granting the preliminary injunctive relief as set forth in the United States' Motion.

IT IS THEREFORE ORDERED that:

1. The motion for preliminary injunction [Dkt. No. 6] is GRANTED;
2. Defendant shall allow APHIS officials to conduct an unannounced inspection of the breeding facility during business hours;
3. Defendant shall ensure that a responsible adult is available to accompany APHIS officials during the inspection process;
4. Defendant shall allow APHIS officials to:
   a. photograph the facility, property, and dogs during the inspection process and to document instances of non-compliance; and
   b. examine and copy AWA mandated records;
5. Defendant shall provide the United States' counsel with an animal inventory to include the breed, sex, age, and unique identification number of each dog at the facility;
6. Defendant shall refrain from acquiring (by birth or transfer) or disposing (by euthanasia or transfer) any dogs in her possession or control without the consent of the United States or, if the United States denies consent, a court order; and
7. Defendant shall provide notice to the United States' counsel within 72 hours of any changes to the animal inventory, including the birth or death of any dogs at the facility.

Dated this 29th of January 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE